**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

HILLARY SMALLWOOD,

                              Plaintiff,

-against-

DELTA AIR LINES, INC.

                              Defendant.

Civil Action No. 1:18-cv-03543-FB-ST

*Oral Argument Requested*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**DELTA AIR LINES, INC.'S MOTION FOR SUMMARY JUDGMENT**

Dated: April 22, 2020

**Morgan, Lewis & Bockius LLP**

Ira G. Rosenstein
Michael F. Fleming
Jordan S. Fisher
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001

ira.rosenstein@morganlewis.com
michael.fleming@morganlewis.com
jordan.fisher@morganlewis.com

*Attorneys for Defendant Delta Air Lines, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................ 11

I. PLAINTIFF CANNOT ESTABLISH OR PREVAIL ON HER FMLA CLAIMS ......... 11

    A.    Plaintiff's FMLA Claims Are Partially Time-Barred .......................................... 12

    B.    Plaintiff Cannot Establish a Claim for FMLA Interference ................................ 12

    C.    Plaintiff Cannot Establish or Prevail on a Claim for FMLA Retaliation ............. 15

II. PLAINTIFF CANNOT ESTABLISH OR PREVAIL ON HER DISABILITY CLAIMS ............................................................................................................... 20

    A.    Plaintiff's ADA Claims Are Partially Time-Barred .......................................... 21

    B.    Plaintiff Cannot Establish That She Was A Qualified Individual With A Disability .......................................................................................................... 21

    C.    Plaintiff Cannot Establish a Claim for Disability-Based Retaliation .................. 22

    D.    Plaintiff Cannot Establish a Claim for Failure to Accommodate ...................... 24

CONCLUSION ....................................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alejandro v. New York City Dep't of Educ.*,
    No. 15-3346, 2017 WL 1215756 (S.D.N.Y. Mar. 31, 2017) ............................................14, 15

*Amaya v. Ballyshear LLC*,
    340 F. Supp. 3d 215, 221 (E.D.N.Y. 2018) .................................................................................21

*Baguidy v. Boro Transit Inc.*,
    283 F. Supp. 3d 14, 31 (E.D.N.Y. 2017) ....................................................................................16

*Bartone v. Mattera*,
    No. 15-6362 (MKB), 2016 WL 6537957 (E.D.N.Y. Nov. 3, 2016) ...........................................21

*Bolden v. Cablevision Sys., Corp.*,
    No. 09-2312, 2011 WL 3439532 (E.D.N.Y. July 26, 2011) ......................................15, 16, 21

*Bong Chul Kim v. Bogopa Servs. Corp.*,
    No. 15-21741, 2017 WL 3242253 (E.D.N.Y. July 28, 2017) ....................................................20

*Booker v. Soho Studio Corp.*,
    No. 17-5426, 2020 WL 363912 (E.D.N.Y. Jan. 22, 2019) ........................................................22

*Chang v. Safe Horizons*,
    254 F. App'x. 838 (2d Cir. 2007) ...............................................................................................16

*Corr v. MTA Long Island Bus*,
    27 F. Supp. 2d 359 (E.D.N.Y. 1998), *aff'd*, 199 F.3d 1321 (2d Cir. 1999) ..............................24

*Cousar v. New York-Presbyterian/Queens*,
    No. 16-1784, 2019 WL 4015440 (E.D.N.Y. Aug. 26, 2019) .....................................................23

*Esar v. JP Morgan Chase Bank N.A.*,
    No. 15-0382, 2018 WL 2075421 (E.D.N.Y. May 3, 2018) ........................................................15

*Fernandez v. Woodhull Med. & Mental Health Ctr.*,
    No. 14-4191, 2017 WL 3432037 (E.D.N.Y. Aug. 8, 2017) ................................................16, 19

*Flanagan v. N. Shore Long Island Jewish Health Sys.*,
    No. 11-5246, 2014 WL 4905124 (E.D.N.Y. Sept. 30, 2014) .....................................................17

*Geromanos v. Columbia Univ.*,
    322 F. Supp. 2d 420 (S.D.N.Y. 2004) .......................................................................................19

*Graziadio v. Culinary Inst. of Am.*,
   817 F.3d 415 (2d Cir. 2016)................................................................................11, 14

*Gronne v Apple Bank For Sav.*,
   1 F. App'x 64 (2d Cir. 2001) ........................................................................................24

*Hardwick v. Auriemma*,
   983 N.Y.S.2d 509 (N.Y. App. Div. 2014) ...................................................................21

*Hockenjos v. Metro. Transportation Auth.*,
   No. 14-1679, 2016 WL 2903269 (S.D.N.Y. May 18, 2016), *aff'd sub nom.*
   *Hockenjos v. MTA Metro-N. R.R.*, 695 F. App'x 15 (2d Cir. 2017) ...........................13, 18, 20

*Hoffman v. Parade Publications*,
   15 N.Y.3d 285 (N.Y. 2010) .........................................................................................21

*Horsting v. St. John's Riverside Hosp.*,
   No. 17-3230, 2018 WL 1918617 (S.D.N.Y. Apr. 18, 2018) .......................................15

*Jackan v. New York State Dep't of Labor*,
   205 F.3d 562 (2d Cir. 2000).........................................................................................24

*Jacobson v. Capital One Fin. Corp.*,
   No. 16-6169, 2018 WL 6817064 (S.D.N.Y. Dec. 12, 2018) .......................................24

*Kosack v. Entergy Enterprises, Inc.*,
   No. 14-9605, 2019 WL 330870 (S.D.N.Y. Jan. 25, 2019) ..........................................13

*Lawson v. Homenuk*,
   710 F. App'x 460 (2d Cir. 2017) .................................................................................22

*Lazzari v. N.Y.C. Dep't of Parks & Recreation*,
   751 F. App'x. 100 (2d Cir. 2018) ................................................................................22

*Lewis v. New York City Police Dep't*,
   908 F. Supp. 2d 313 (E.D.N.Y. 2012), *aff'd sub nom. Lewis v. NYC Police
   Dep't*, 537 F. App'x 11 (2d Cir. 2013) .........................................................................12, 24

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973).....................................................................................................15, 22

*Mejia v. Roma Cleaning, Inc.*,
   751 F. App'x 134 (2d Cir. 2018) .................................................................................12

*Mendez-Nouel v. Gucci Am., Inc.*,
   No. 10-3388, 2012 WL 5451189 (S.D.N.Y. Nov. 8, 2012), *aff'd* 542 F. App'x
   12 (2d Cir. 2013)..........................................................................................................17

*Neal v. JPMorgan Chase Bank, N.A.*,
    No. 10-1157, 2012 WL 3249477 (E.D.N.Y. Aug. 8, 2012) ............................................14, 20

*Philippe v. Santander Bank, N.A.*,
    No. 15-2918, 2018 WL 1559765 (E.D.N.Y. Mar. 31, 2018)...........................................16, 19

*Porter v. Donahoe*,
    484 F. App'x 589 (2d Cir. 2012) ..................................................................................14, 15

*Porter v. New York Univ. Sch. of Law*,
    392 F.3d 530 (2d Cir. 2004)................................................................................................12

*Powell v. Dep't of Educ. of City of New York*,
    No. 14-2363, 2018 WL 4185702 (E.D.N.Y. Aug. 30, 2018) ...............................................23

*Richard v. New York City Dep't of Educ.*,
    No. 16-0957 (MKB), 2017 WL 1232498 (E.D.N.Y. Mar. 31, 2017)....................................16

*Roberts v. Health Ass'n*,
    308 F. App'x 568 (2d Cir. 2009) ..................................................................................17, 20

*Saenger v. Montefiore Med. Ctr.*,
    706 F. Supp. 2d 494 (S.D.N.Y. 2010)................................................................................18

*Sista v. CDC Ixis N. Am., Inc.*,
    445 F.3d 161 (2d Cir. 2006)................................................................................................11

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001).................................................................................................17

*Thomson v. Odyssey House*,
    652 F. App'x 44 (2d Cir. 2016) ........................................................................................23

*Vandenbroek v. PSEG Power Conn. LLC*,
    356 F. App'x. 457 (2d Cir. 2009) ......................................................................................22

*Woods v. START Treatment & Recovery Ctrs., Inc.*,
    864 F.3d 158 (2d Cir. 2017)................................................................................................11

*Woolf v. Strada*,
    949 F.3d 89 (2d Cir. 2020).................................................................................................21

*Yetman v. Capital Dist. Transportation Auth.*,
    669 F. App'x 594 (2d Cir. 2016) ......................................................................................12

**Statutes**

29 U.S.C. § 2617(c) ....................................................................................................12

42 U.S.C. § 2000e-5(e) ..............................................................................................21

42 U.S.C. § 12117(a) ..................................................................................................21

Americans with Disabilites Act ........................................................................... *passim*

Family Medical Leave Act..................................................................................... *passim*

New York City Human Rights Law ...................................................................... *passim*

New York City Human Rights Law ...................................................................... *passim*

**Other Authorities**

29 C.F.R. § 825.115 ...................................................................................................10

29 C.F.R. § 825.306 ...................................................................................................15

29 C.F.R. § 825.307 ...................................................................................................15

## PRELIMINARY STATEMENT

On April 12, 2017, Plaintiff Hillary Smallwood ("Plaintiff") failed to arrive for her assignment as part of a crew of flight attendants scheduled to work a rotation of flights for Delta Air Lines ("Delta" or "Defendant").  Federal regulations strictly mandate the number of flight attendants – who hold safety-sensitive positions – that must be aboard an aircraft before it is permitted to board or take off.  To ensure compliance with these regulations, and otherwise to fulfill its commitment to carry passengers to their destinations safely, comfortably, and on-time, Delta requires that flight attendants give reasonable notice of an absence (at least three hours before the report time for the flight) so that, if necessary, a replacement can be assigned to cover the flight. Despite being aware that she would be absent well before her scheduled report time on April 12th, Plaintiff did not inform Delta that she was not going to make the flight until after the required notification time.

In accordance with Delta's policy, because Plaintiff "failed to cover" the April 12th flight, she was required to speak with her manager before she could fly again.  When she did so later that day, Plaintiff explained that she was absent because she had a tooth removed earlier in the week and her doctor had advised against flying.  Now, in her First Amended Complaint and in sworn testimony given during her deposition, Plaintiff claims the April 12th absence was because of a "flare up" of bursitis in her left hip, a condition she was not diagnosed with until the end of April 2017.

Plaintiff's April 12th absence and her corresponding violation of Delta's policies were not isolated incidents.  Plaintiff was absent eight other days in April 2017 alone.  Two years earlier, Plaintiff received a written final corrective action notice ("FCAN"), the last stage in Delta's performance development process before termination, due to excessive absences and failing to

1

cover two flights in a one month period.  Between June 2015 when she received the FCAN and April 2017, Plaintiff was absent without excuse more than 30 days.  Despite that abominable attendance record, and the fact that she was on notice from the FCAN that continued poor performance could lead to termination, Delta's managers showed remarkable patience with Plaintiff and coached her repeatedly on her attendance, but took no further disciplinary action against her.  However, Plaintiff's excessive absences in April 2017, coupled with her "failure to cover" the April 12th flight, were the final straws for Delta.

As she had failed to improve her reliability despite coaching and because her lack of reliability jeopardized Delta's ability to run its operations effectively, Delta managers in New York and at its headquarters in Atlanta recommended that Plaintiff be suspended, provided the opportunity to resign, and, if she chose not to resign, that her employment be terminated.  Plaintiff declined to resign and was terminated at the end of May 2017.  The decision was later affirmed by a neutral panel of Delta employees (including other flight attendants) through an internal appeals process in July 2017.  All of the above facts are supported by the contemporaneous documentary record.

Notwithstanding, Plaintiff now falsely charges Delta with retaliating against her for use of FMLA leave and/or because of her bursitis.  Plaintiff's claims are all wholly without merit.  There is no evidence in the record that suggests – let alone provides materially support for – a colorable argument that Delta interfered in any way with Plaintiff's use of FMLA leave during her employment.  To the contrary, the record indisputably demonstrates that Plaintiff applied for and was granted permission to use FMLA leave throughout her employment, including from December 2016 to February 2017.  It is also indisputable that when Plaintiff sought FMLA leave in May 2017, after all of the events that ultimately led to her termination, her application was appropriately

denied by Sedgwick Claims Management ("Sedgwick") – Delta's third-party FMLA and disability leave provider – based on a medical certification from Plaintiff's own doctor, who unambiguously stated that Plaintiff's recently-diagnosed bursitis did not qualify as a serious health condition under the FMLA.

Plaintiff's FMLA "retaliation" claim is similarly deficient.  There is not a shred of evidence in the record that could support a claim that Delta's decision to terminate Plaintiff's employment – based on her lengthy history of unreliability culminating in her unexcused "failure to cover" the April 12th flight – was in any way influenced by any of her applications for FMLA leave to Sedgwick.  Importantly, there is no evidence that Delta even knew of Plaintiff's May 2017 application when the decision was made to suspend and then terminate her employment.  Plaintiff is wholly unable to satisfy her burden of establishing that Delta's professed reasons are pretextual and that the real reason for her termination was her untimely, insufficient, and unknown FMLA request based on bursitis.  Therefore, Delta is entitled to summary judgment on each of Plaintiff's FMLA claims.

Plaintiff's alternative theory of liability for disability discrimination under the Americans with Disabilities Act ("ADA") and supplemental New York State and New York City laws also are without merit.  Again, there is no evidence that anyone at Delta was aware that Plaintiff had bursitis, which she was diagnosed with only after she had accrued all of the absences that led to her termination.  Moreover, Plaintiff has provided no evidence that her bursitis interferes with a major life activity, or that it affected her ability (with or without an accommodation) to perform the essential functions of her job as a flight attendant.  Instead, like her FMLA claims, Plaintiff attempts to use the ADA to exempt her from meeting Delta's regular and reasonable performance

expectations.  However, it is well settled that neither law provides a shield from legitimate discipline.

The indisputable record before this Court establishes conclusively that Plaintiff's termination was legitimate and non-discriminatory, as it was properly based upon Plaintiff's lengthy history of unexcused absences and policy violations and her repeated failure to improve despite every effort by Delta to help her do so.  This is precisely the scenario of undisputed, *material* facts for which Rule 56 of the Federal Rules of Civil Procedure was designed.  Accordingly, Delta requests that the Court award it summary judgment on each of Plaintiff's claims and dismiss her Complaint in its entirety.

## RELEVANT FACTUAL BACKGROUND[1]

### A.    Delta's Commitment to Safety, Reliability, and Employee Health.

Delta prioritizes the health and safety of its employees, and endeavors to accommodate its employees' medical conditions whenever it is reasonably possible to do so, including through generous FMLA and disability leave policies.  (56.1 at ¶¶ 16-17.)  At the same time, in order to meet its commitment to its passengers to carry them to their destinations safely and on time, Delta expects that its flight attendants will report to work as scheduled (Delta refers to this as a standard of "reliability").  (*Id.* at ¶¶ 4-8; Pl. Tr. 90-:14 – 92:15.)  However, reliability is not just a business principal for Delta; the Federal Aviation Administration ("FAA") also strictly regulates the

---

[1] A complete statement of undisputed material facts is set forth separately pursuant to Local Rule 56.1.  *See* Defendant Delta Air Lines, Inc.'s Local Rule 56.1 Statement Of Undisputed Material Facts In Support Of Its Motion For Summary Judgment (hereinafter Delta's "56.1").  Delta only summarizes those facts herein for the Court's convenience.  Citations to the record will be as follows: (1) Plaintiff's First Amended Complaint, filed on September 4, 2019 (Dkt. No. 40) ("FAC."); (2) Excerpts from the transcript of the deposition of Plaintiff, taken on March 12, 2019 ("Pl. Tr."), annexed to the attached to the Declaration of Michael F. Fleming ("Fleming Decl.") as Exhibit ("Ex.") A; (3) excerpts from the transcript of the deposition of David Gilmartin, taken on May 28, 2019 ("Gilmartin Tr."), annexed to the Fleming Decl. as Ex. B; (4) excerpts from the transcript of the deposition of John Marsh, taken on June 11, 2019 ("Marsh Tr."), annexed to the Fleming Decl. as Ex. C; and (5) excerpts from the transcript of the deposition of Joan Beckley, taken on July 17, 2019 ("Beckley Tr."), annexed to the Fleming Decl. as Ex. D.

number of flight attendants that must be staffed to a flight and prohibits an airline from operating a flight if the minimum number is not met.  (56.1 at ¶ 4.)  Late arriving employees significantly delay flights (not just their own assigned trips) and understaffed planes cannot fly at all.  (*Id*.)

Accordingly, to reduce the risk of delays and cancellations, Delta maintains a written Absence Notification Policy, that, among other things, requires flight attendants to give as much notice as possible of an absence so that staffing can be arranged to "cover" affected flights.  (*Id.* at ¶¶ 5-8; Fleming Decl., Ex. H.)  Flight attendants assigned to a rotation of flights (commonly referred to as a "trip") are required to report absences within three hours of a scheduled report time for that trip.  (*Id*.)  If a flight attendant calls in an absence less than three hours before her report time, the Policy clearly states that their schedule will be marked CFSM.  (*Id*.)  "CFSM" is a scheduling code that indicates that a flight attendant has failed to cover a flight and must meet with a Field Service Manager ("FSM") – the direct supervisors of flight attendants – before flying again.  (*Id*.)  After a flight attendant meets with a FSM to discuss the policy violation, the scheduling code will be changed to "MTO" (indicating that the absence was for personal reasons and will be excused) or "FCOK" (indicating that the flight attendant has met with a manager and is approved to fly again).  (*Id.*)  As described in the Absence Notification Policy, chronic absenteeism, lateness, or repeated FCOKs can be addressed with various forms of performance development – including informal coaching, Written Coaching, or more advanced Corrective Action Notices ("CANs") and ("FCANs") – and a failure to improve over a prolonged period of time can lead to termination. (*Id.*)

### B.  Plaintiff's Employment with Delta and Reliability Issues 2009-2015

Plaintiff joined Delta as a flight attendant in 2009, when the Company merged with Plaintiff's former employer, Northwest Airlines.  (*Id.* at ¶ 25.)  Throughout her employment with

Delta, Plaintiff was unable to show up for work reliably. (*Id.* at ¶ 27.) Plaintiff's FSMs addressed these issues with Plaintiff repeatedly through regular performance development, including numerous informal coaching sessions, a Written Coaching issued to Plaintiff on July 24, 2013 and a CAN issued in October 19, 2013. (*Id.* ¶ 28; Fleming Decl., Exs. N, O.) Despite these efforts, Plaintiff's reliability remained unacceptable. On June 21, 2015, after she failed to cover flights on May 19, 2015 and June 18, 2015, Plaintiff was issued an FCAN. (56.1 at ¶ 29; Fleming Decl., Ex. P.) In the 2015 FCAN, Plaintiff was specifically advised that "immediate and lasting improvement in [her] reliability [was] needed" and that failure to improve her performance (or any other policy infraction) could result in "further corrective action, up to and including recommendation for termination of [her] employment." (*Id.*)

**B.     Reliability Issues Continue After Plaintiff Transfers to New York in 2015.**

In October 2015, a few months after receiving the FCAN, Plaintiff transferred from Delta's Atlanta hub to New York and was supervised by new managers, including FSM John Marsh. (56.1 at ¶ 31.) In New York, Plaintiff's attendance became increasingly unreliable. Between October 2015 and April 2017, Plaintiff accrued nearly two dozen unexcused absences and failed to cover two more flights.[2] (*Id.* at ¶¶ 32, 34-35, 50-51, 55, 65.) Plaintiff's managers continued to provide coaching to Plaintiff; however, despite their patience and efforts, Plaintiff was unable or unwilling to meet Delta's reliability standards. (*Id.* at ¶ 33, 40-41.)

The events taking place in April 2017 - which are not in dispute and are well documented in the record before the Court – finally had the consequence warned of in Plaintiff's FCAN: the termination of her employment. (*Id.* at ¶¶ 50-71.) First, Plaintiff had an unexcused absence from April 4 through April 6, because, she now claims, she had an abscessed tooth. (*Id.* at ¶ 50; FAC

---

[2] Separately, Plaintiff also was approved for and used FMLA leave on several occasions, including intermittent FMLA leave from December 28, 2016 through February 27, 2017. (56.1 at ¶¶ 34-19.)

at ¶ 33; Pl. Dep. at 165:16 – 166:4.)  Plaintiff was next scheduled to fly on April 12, 2017 and for the two days after that.  (56.1 at ¶ 51.)  Although she knew she would not make the flight long before her report time, Plaintiff chose not to call Delta and notifying her managers that she would not make the flight.  (*Id.* at ¶ 52-53.)  Instead, Plaintiff put her trip on the "swapboard"[3] in the hopes that she would avoid having to call in sick at all.  (*Id.*)  Three hours before her report time, Plaintiff decided that no one was likely to pick up her flight, and so she finally called Delta to report her absence.  (*Id.*)  Consistent with the Absence Notification Policy, Plaintiff was advised that she was receiving a CFSM on her schedule and needed to speak with her FSM.  (*Id.*)  When she spoke to John Marsh later that day, she told him that her doctor did not want her to fly so soon after she had her tooth removed.  (*Id.*)

That same day, Plaintiff called Sedgwick ostensibly to apply for FMLA leave.  (*Id.* at ¶ 54.)  Pursuant to its ordinary procedures, Sedgwick sent Plaintiff an FMLA application packet, which included a cover letter explaining the application process, an authorization for release of medical information, and a medical certification that her doctor needed to complete to certify Plaintiff was qualified for FMLA leave.[4]  (*Id.* at ¶ 56.)  The cover letter asked that Plaintiff return the application as soon as possible, and, in no event later than May 5, 2017.  (*Id.*)  As the deadline to submit her FMLA application approached, Sedgwick reminded Plaintiff several times that she needed to submit her medical certification and provide an explanation of the circumstances of the April 12th "failure to cover."  (*Id.* at ¶¶ 58, 61-62.)  Plaintiff did not respond to any of these efforts.  (*Id.*)  Accordingly, on April 20, 2017, Sedgwick advised Plaintiff and Delta that Plaintiff's pending FMLA application could not cover her absences from April 12-14, 2017.  (*Id.* at ¶¶ 62-63.)

---

[3] The "swapboard" is an Delta intranet website where flight attendants post about and arrange to trade flight assignments.  (56.1 at ¶ 52.)
[4] Plaintiff was familiar with this process, having applied for and been approved to use intermittent FMLA leave in late December 2016.  (56.1 at ¶¶ 34-19.)

Plaintiff called in absent again for a rotation scheduled for April 24-26, 2017 without explanation.  (*Id.* at ¶ 64.)  On May 5, 2017, having received no documents from Plaintiff or her doctor, Sedgwick notified Plaintiff and Delta that her FMLA application was being denied in its entirety and that none of her April 2017 absences would be covered by FMLA.  (*Id.* at ¶ 69.)

### C.    Plaintiff is Terminated for Poor Reliability in May 2017.

During April and early May, Plaintiff's managers met to consider how to respond to Plaintiff's unexcused absences and policy violations, particularly in light of her prior coachings and the FCAN.  (*Id.* at ¶ 71.)  Ultimately, they decided to recommend suspending Plaintiff pending a review for termination.  (*Id.* at ¶¶ 71-72.)  Plaintiff was notified of the suspension decision on May 10, 2017.  (*Id.* at ¶ 73.)  The following day, members of Delta's HR department reviewed the circumstances and for the same reasons affirmed the decision to terminate.  (*Id.* at ¶ 75.)  On May 30, 2017, New York Base Director David Gilmartin and Corporate Director Tanya Morgan flew to Memphis and met with Plaintiff.  (*Id.* at ¶ 77.)  Mr. Gilmartin and Ms. Morgan explained to Plaintiff that a decision had been made to terminate her employment, but that she would be given the option to resign and remain eligible for certain retirement benefits.  (*Id.* at ¶ 77.)  Plaintiff declined this offer and her employment was terminated accordingly.  (*Id.*)

After her termination, Plaintiff filed an appeal of the decision through Delta's Conflict Resolution Process ("CRP"), a voluntary internal appeal process where employees can have certain employment decisions reviewed by a neutral panel of Delta employees whom the employee has no pre-existing relationship with.  (*Id.* at ¶¶ 78-79.)  On July 26, 2017, a CRP panel composed of Delta employees, including members of Plaintiff's peer group, conducted a hearing of Plaintiff's appeal of her termination.  (*Id.* at ¶ 80.)  Plaintiff was permitted to present testimony and evidence

in support of her claim that the decision should be overturned.  (*Id.*)  After hearing from Plaintiff

and from Delta, the CRP Panel affirmed the decision to terminate Plaintiff's employment.  (*Id.*)

### D.       Plaintiff's Late Attempt to Apply for FMLA Leave in May 2017.

Separately from these events, Delta has learned through discovery that on April 13, 2017

(the same day Sedgwick sent Plaintiff the FMLA application and the day after she "failed to cover"

a flight because of an alleged tooth extraction) Plaintiff saw her orthopedist, Dr. Henry Sherman,

because she was purportedly experiencing neck and foot pain.  (*Id.* at ¶ 57.)  At that time, Plaintiff

was diagnosed with disc degeneration in her neck and tendinitis in her foot.  (*Id.*)  There is no

evidence in the record that Plaintiff provided her FMLA paperwork to Dr. Sherman at that time or

otherwise discussed FMLA leave with him.  On April 27, 2017, after Plaintiff was again absent

for three days in a row, Plaintiff made another visit to Dr. Sherman.  (*Id.* at ¶¶ 64, 66.)  During that

visit, Dr. Sherman apparently diagnosed her with bursitis in her hip.  (*Id.* at ¶ 66.)  There is also

no evidence in the record that Plaintiff discussed FMLA with Dr. Sherman during this visit, either,

although Sedgwick had been regularly contacting Plaintiff about completing her April 2017

application.  (*Id.* at ¶ 56, 58-59, 61-63, 65.)

On May 8, 2017, after her April 2017 FMLA application had been denied, Plaintiff applied

again for intermittent FMLA leave from April 27, 2017 through June 9, 2017 for physical therapy

treatment of her bursitis.  (*Id.* at ¶ 81.)  Upon review of the medical certification submitted in

support of the application, Sedgwick determined that there were numerous deficiencies in the

application, mostly notably that it did not support a finding that Plaintiff had a "serious medical

condition" under the FMLA.  (*Id.* at ¶¶ 83-87.)

In Part B of the medical certification form, which asks a series of questions to determine if

the applicant has a "serious health condition" under the FMLA, Dr. Sherman answered seven of

nine questions in the negative.  (Plaintiff's May 8, 2017 Medical Certification, annexed to the Fleming Decl. at Ex. QQ.)  Specifically, in response to the question of whether or not Plaintiff was admitted overnight to the hospital, Dr. Sherman responded in the negative.  (*Id.*)  Accordingly, Plaintiff needed to establish that she would need "continuing treatment" from her doctor.  To determine whether an applicant requires "continuous treatment" as defined by 29 C.F.R. § 825.115, a physician must certify whether the employee has been incapacitated and requires treatment (§ 824.115(a)), pregnant (§ 824.115(b)), suffers from a chronic condition (§ 824.115(c)), suffers from a permanent or long term condition ((§ 824.115(d)), or from a condition requiring multiple treatments (§ 824.115(e)).  Dr. Sherman unambiguously answered each of these questions in the negative.  (Fleming Decl. at Ex. QQ, at § B, question 2 (pregnancy), 3 (incapacity and treatment), 6 (chronic condition), 8 (permanent or long-term treatment), and 9 (condition requiring multiple treatments).)  The May 2017 submission also only sought prospective FMLA leave from April 27, 2017 through June 9, 2017.  (*Id.* at § D.)

Sedgwick notified Plaintiff and Dr. Sherman of the deficiencies in the submission and gave each several opportunities to correct the form, to no avail.  (*Id.* at ¶¶ 87-88.)  There is no evidence in the record that Sedgwick notified Delta or Plaintiff's managers about the medical certification submitted in May 2017 or Sedgwick's subsequent communication with Plaintiff and her doctor concerning that form.  Indeed, both Marsh and Gilmartin denied having any knowledge of it.  (*Id.* at ¶ 82.)  Sedgwick denied Plaintiff's application on May 26, 2017 – five days before Plaintiff was notified of her termination – for insufficient medical certification.  (*Id.* at ¶ 89.)

### E.     Plaintiff Charges Delta with FMLA and Disability-based Retaliation.

On September 5, 2017, Plaintiff filed a charge of discrimination with the EEOC, alleging, among other things, that she believed she had been "discriminated and retaliated against for

requesting FMLA due to [her] disability in violation of the Americans with Disabilities Amendments Act."[5]  (*Id.* at ¶ 91.)  On June 18, 2018, Plaintiff commenced this action by filing her original complaint with the Court.  (Dkt. No. 1.)  On August 19, 2019, after the close of discovery, Plaintiff sought leave to file an amended complaint "in order to narrow the claims and for accuracy."  (Dkt. No. 19.)  Plaintiff's request was granted and, on September 4, 2019, Plaintiff filed her FAC, the operative pleading in this Action.  (*See* FAC.)

## ARGUMENT

## I.   PLAINTIFF CANNOT ESTABLISH OR PREVAIL ON HER FMLA CLAIMS.

The Second Circuit recognizes two separate causes of action that an eligible employee may bring against his employer under the FMLA: interference and retaliation.  *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006).  "To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA."  *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).  To succeed on an FMLA retaliation claim, a plaintiff must show she was subjected to an adverse employment action by the defendant because she actually exercised her rights or opposed perceived unlawful conduct under the FMLA.  *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017).  The Second Circuit has described the two causes of action as "*ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA."  *Id.*  Plaintiff cannot present any material facts in dispute here that could plausibly establish a claim under either theory sufficient to avoid judgment in Delta's favor under Rule 56 of the Federal Rules of Civil Procedure.

---

[5] The copy of the charge produced by Plaintiff in this action suggests that it is an amendment of an earlier filed charge on August 28, 2017.  (*See* 56.1 at ¶ 91.)  Plaintiff has not produced a copy of the alleged original charge.

### A.    Plaintiff's FMLA Claims Are Partially Time-Barred.

Initially, Plaintiff's FMLA claims are subject to a two-year statute of limitations.  *See* 29 U.S.C. § 2617(c).  Plaintiff commenced this action on June 18, 2018.  Therefore, Plaintiff's FMLA claims are time-barred to the extent they are based on alleged events occurring prior to June 18, 2016.[6]  *See Porter v. New York Univ. Sch. of Law*, 392 F.3d 530, 532 (2d Cir. 2004).  Notably, this includes Plaintiff's allegations regarding her receipt of a CAN in October 2013 and an FCAN in June 2015.  (*See* FAC at ¶¶ 1-23; 56.1 at ¶¶ 28-29.)

### B.    Plaintiff Cannot Establish a Claim for FMLA Interference.

Although the crux of Plaintiff's action against Delta is her claim that her termination was retaliatory (*see* FAC at ¶ 1), the first "count" in her FAC is styled as one for "interference with FMLA rights."  (*See id.* at ¶¶ 54-57.)  However, apart from alleging that Delta is an "employer" and that she was an "eligible employee" under the FMLA, Plaintiff has not identified any action that she claims constitutes interference with an FMLA application.  (*See* at ¶¶ 54-57.)  That omission is not surprising as there simply is no evidence that could be presented that would suggest, let alone support a plausible allegation of FMLA interference.  To the contrary, the indisputable evidence demonstrates beyond question that Plaintiff had full access to Delta's robust FMLA leave program, fully utilized the program and was approved for leave when she met the criteria of the statute, including in December 2016.

---

[6] To the extent Plaintiff argues that her FMLA claims are subject to the three-year statute of limitations under 29 U.S.C. § 2617(c)(2) for willful violations, the undisputed facts do not support such an argument. To demonstrate "willful" conduct under the FMLA, a plaintiff must show that her employer "knew or showed reckless disregard" for whether its conduct violated the FMLA.  *Porter*, 392 F.3d at 531.  Plaintiff – who was permitted to take leave throughout her employment – cannot meet this standard.  *See Mejia v. Roma Cleaning, Inc.*, 751 F. App'x 134, 136 (2d Cir. 2018) (holding that plaintiff did not meet burden where she had been granted time off under the FMLA); *see also Yetman v. Capital Dist. Transportation Auth.*, 669 F. App'x 594, 595 (2d Cir. 2016) (holding that allegations of misclassified leave was "at worst alleged negligence", not a willful violation."); *Lewis v. New York City Police Dep't*, 908 F. Supp. 313, 325 (E.D.N.Y. 2012), *aff'd sub nom. Lewis v. NYC Police Dep't*, 537 F. App'x 11 (2d Cir. 2013) (two year statute of limitations applied where defendant employer responded to Plaintiff's FMLA leave request and notified Plaintiff of deficiencies).

Based on the medical certification submitted by Dr. Sherman (Plaintiff's orthopedist), Plaintiff's FMLA leave application for December 2016 was granted and Plaintiff was approved to use intermittent FMLA leave from December 27, 2016 to February 27, 2017 for physical therapy treatment of a back or spinal condition.  (*See* 56.1 at ¶¶ 42-46.)  Importantly, Plaintiff admitted that she did not seek to use any of the approved leave after she was granted permission to do so.  (Pl. Tr. at 159:15 – 160:3.)  Accordingly, Plaintiff cannot establish that she was denied any benefit to which she was entitled in connection with that leave request.  *See Kosack v. Entergy Enterprises, Inc.*, No. 14-9605, 2019 WL 330870, at *11 (S.D.N.Y. Jan. 25, 2019) ("The alleged interference must ultimately result in a denial of a benefit under the FMLA" (internal citation omitted)); *Hockenjos v. Metro. Transportation Auth.*, No. 14-1679, 2016 WL 2903269, at *8 (S.D.N.Y. May 18, 2016), *aff'd sub nom. Hockenjos v. MTA Metro-N. R.R.*, 695 F. App'x 15 (2d Cir. 2017) ("Critical to the success of an FMLA interference claim, however, is evidence that an employer interfered with an employee's FMLA leave.").

To the extent that Plaintiff were to argue that Delta interfered with her request for FMLA leave in April 2017 based on the telephone call she made to a Sedgwick representative on April 12th, that claim too would not be colorable.  The documentary evidence and Plaintiff's own testimony confirm that after Plaintiff spoke to a Sedgwick representative, she was provided an application, told to submit that application with medical certification no later than May 5, 2017, and that she never did so, despite several follow up communications from Sedgwick.  (56.1 at ¶¶ 54, 56, 58-59, 61-63, 65, 67, 69.)  As the Southern District recently observed:

> [S]everal Circuits have expressly recognized, [the DOL implementing regulations]—far from precluding follow-up requests—in fact *expressly require* employers to "advise an employee whenever the employer finds a certification incomplete or insufficient," to "state in writing what additional information is necessary to make the certification complete and sufficient," and to

"provide the employee with seven calendar days to cure any such deficiency." ***Critically, "[i]f the deficiencies specified by the employer are not cured in the resubmitted certification, the employer may deny the taking of FMLA leave," and a "certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification" in the first place.***

*Alejandro v. New York City Dep't of Educ.*, No. 15-3346, 2017 WL 1215756, at \*21 (S.D.N.Y. Mar. 31, 2017) (internal citations omitted) (first emphasis in original); *see also Porter v. Donahoe*, 484 F. App'x 589 (2d Cir. 2012) (holding that if medical certification is not corrected, an employer's decision to deny FMLA leave is not interference with an employee's FMLA rights). Accordingly, a claim that Delta interfered with her rights under the FMLA pertaining to her April phone call to Sedgwick, simply cannot stand.

Finally, were Plaintiff to argue that Delta interfered with her FMLA rights by denying her May 2017 application for intermittent leave for her claimed bursitis, that claim too fails on its face. To succeed on her FMLA interference claim, Plaintiff must do more than just show that she was denied FMLA leave; she must establish that Delta denied or otherwise interfered with a benefit to which she was underlined entitled under the Act. *Porter*, 484 F. App'x at 590; *see also Graziadio*, 817 F.3d at 424. Plaintiff simply cannot meet that burden here, since she was not entitled to FMLA leave based on her own doctor's submission. Again, Sedgwick promptly processed Plaintiff's application once it was submitted in May, identified deficiencies in the medical certification and asked Plaintiff and her doctor to correct these deficiencies. They did not, and Sedgwick found that Plaintiff was not eligible for leave based on her own doctor's submission unequivocally stating that her bursitis was not a serious medical condition. (56.1 at ¶¶ 81-90.)

Plaintiff cannot save her "interference" claim merely by disagreeing with Sedgwick's determination that she was not eligible for FMLA leave. *Neal v. JPMorgan Chase Bank, N.A.*, No. 10-1157, 2012 WL 3249477, at \*15 (E.D.N.Y. Aug. 8, 2012)  Sedgwick's determination that

14

Plaintiff did not have a "serious medical condition" was based on Dr. Sherman's own statement that Plaintiff did not require "inpatient care" or "continuing treatment."  (56.1 at ¶¶ 84-89.)  It is a matter of well-settled law that Delta, through Sedgwick, was entitled to rely on the information provided in the medical certification provided by Plaintiff in making the determination about whether to grant leave.  29 CFR § 825.306 – 825.307; *see also Esar v. JP Morgan Chase Bank N.A.*, No. 15-0382, 2018 WL 2075421, at \*16 (E.D.N.Y. May 3, 2018).  Accordingly, Plaintiff's FMLA interference claim also fails with regard to her May 2017 application.  *Porter* 484 F. App'x at 590; *Horsting v. St. John's Riverside Hosp.*, No. 17-3230, 2018 WL 1918617, at \*4 (S.D.N.Y. Apr. 18, 2018) (dismissing FMLA interference claim based on insufficient application); *Alejandro*, 2017 WL 1215756 at \*21 (same).

Accordingly, her FMLA "interference" must be summarily dismissed.

## C.      Plaintiff Cannot Establish or Prevail on a Claim for FMLA Retaliation.

Plaintiff's FMLA retaliation claim contained in Count II of her Complaint, is no more colorable than her deficient interference claim.  Plaintiff has not alleged, let alone provided support for a viable claim that any purported protected activity under the FMLA plausibly "caused" her termination.  FMLA retaliation claims are examined under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bolden v. Cablevision Sys., Corp.*, No. 09-2312, 2011 WL 3439532, \*4 (E.D.N.Y. July 26, 2011) (Block, J.).  To set forth a claim for retaliation, a plaintiff must first establish a *prima facie* case, which a defendant can defeat by demonstrating a legitimate, non-discriminatory reason for the challenged employment actions.  *Id.*  To prevail at the summary judgment stage, a plaintiff must present evidence that shows that the defendant's proffered reason is pretextual and that defendant was actually motivated by retaliatory animus.  *Id.*

Here, Plaintiff cannot establish that her termination occurred under circumstances giving

rise to an inference of retaliatory intent, because, she cannot show a plausible "causal connection" between her exercise of FMLA rights and her termination. *Fernandez v. Woodhull Med. & Mental Health Ctr.*, No. 14-4191, 2017 WL 3432037, at *8 (E.D.N.Y. Aug. 8, 2017). Moreover, even if she could meet that *prima facie* burden, she cannot demonstrate that Delta's stated reason for her termination – her long-term, abominable reliability record, culminating in her failure to cover on April 12, 2017 – was a pretext, and that the real reason she was terminated was because she submitted a request for intermittent FMLA leave to Sedgwick. *Bolden*, 2011 WL 3439532 at *4.[7]

In analyzing whether Plaintiff has satisfied her burden here, "[r]ather than assuming that all negative actions or considerations during FMLA leave are impermissible," the Court must find that Plaintiff provided some evidence that is indicative of retaliatory animus because of the exercise of an FMLA protected right. *Philippe v. Santander Bank, N.A.*, No. 15-2918, 2018 WL 1559765, at *12 (E.D.N.Y. Mar. 31, 2018); *see also Fernandez*, 2017 WL 3432037, at *13 (finding that "generalized hostility towards [plaintiff's] medically necessary absences" did not support an inference of retaliatory intent). The only feeble effort Plaintiff makes to try to support her FMLA retaliation claim is based solely on the timing of her termination. There are no alleged comments or other indicia of animus. Plaintiff solely contends that because her termination followed her call to Sedgwick in April 2017 and the submission of an FMLA application in May 2017, it "must"

---

[7] To the extent that Plaintiff were to complain that any of her earlier "coachings" administered by her managers after she received her FCAN concerning her poor reliability or the "coding" of her absences on her schedule, were retaliatory such efforts would be unavailing. Courts have repeatedly held that routine performance development is not an adverse employment action. *See, e.g., Chang v. Safe Horizons,* 254 F. App'x. 838, 839 (2d Cir. 2007) ("[O]ral and written warnings do not amount to materially adverse conduct . . . [because] the application of the employer's disciplinary policies to the employee, without more, does not constitute adverse employment action." (internal quotation, citation, and alterations omitted)); *Richard v. New York City Dep't of Educ.*, No. 16-09571, 2017 WL 1232498, at *11 (E.D.N.Y. Mar. 31, 2017) ("[A] letter-to-file absent material adverse employment consequences is not an adverse employment action."); *Baguidy v. Boro Transit Inc.*, 283 F. Supp. 3d 14, 31 (E.D.N.Y. 2017) ("A written notice . . . categorically is not an adverse action," because "the ordinary application of an employer's disciplinary policies also is not an adverse employment action."). Nor can she demonstrate that her coachings were caused by preceding FMLA requests as opposed to the indisputable fact that she failed to show up for her assignments in compliance with Delta's policies.

16

have resulted from those FMLA requests.  (FAC at ¶¶ 38-47.)  However, that type of conclusory allegation is a classic example of fallacious reasoning, insufficient to create even a colorable issue of disputed fact, let alone support a viable retaliation claim.

Further, courts routinely recognize that relying on temporality alone is insufficient to raise an inference of discrimination where, as is the case here, the allegedly adverse act was part of progressive discipline that began before the alleged protected activity or there is a separate intervening incident that supports the adverse action.  *See e.g., Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); *Roberts v. Health Ass'n*, 308 F. App'x 568, 570 (2d Cir. 2009) (no inference of FMLA retaliation raised where termination was only six days after employee gave notice of intent to take FMLA leave where evidence established employer previously told employee that her job was in jeopardy if she did not provide insurer with evidence of her disability); *c.f., Mendez-Nouel v. Gucci Am., Inc.,* No. 10-3388, 2012 WL 5451189, at *13 (S.D.N.Y. Nov. 8, 2012), *aff'd,* 542 F. App'x 12 (2d Cir. 2013) ("[A] causal inference may be negated—or, put differently, the causal chain broken—where an intervening event post-dating the protected conduct provides an independent basis for the adverse action.").  Holding otherwise would mean that once an employee sought leave, he or she would be immune from any discipline for misconduct regardless of whether that misconduct predated or postdated the request for leave. Naturally, that is not consistent with any interpretations of federal employment law.  *See, e.g., Flanagan v. N. Shore Long Island Jewish Health Sys.*, No. 11-5246, 2014 WL 4905124, at *13 (E.D.N.Y. Sept. 30, 2014) ("[E]ngaging in protected activity is not a license for an employee to stop doing his or her job, nor does it immunize that employee against termination or other adverse

17

employment actions for unprofessional or insubordinate behavior."); *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 519 (S.D.N.Y. 2010) ("Plaintiff cannot use the threat of a discrimination lawsuit to immunize himself from the reasonable and foreseeable consequences of his misconduct, especially misconduct that pre-dates any protected activity.").

Here, the decision to terminate Plaintiff for poor reliability came only after five years of efforts by Plaintiff's managers to encourage her to improve her reliability. Delta administered progressive performance development to Plaintiff, culminating in a FCAN issued in June 2015. (56.1 at ¶ 29.) In that written FCAN, Plaintiff was explicitly advised that failure to improve her performance would lead to a review of her employment for termination. (*Id.*) For the next two years, Plaintiff's managers continued to coach Plaintiff on the issue of reliability. It was only after Plaintiff accumulated a dozen additional unexcused absences, and the inexcusable failure to cover on April 12th, that Delta was compelled to make the decision that Plaintiff's performance would not improve and termination was warranted. (*Id.* at ¶¶ 32-33, 34, 50, 51-53, 55, 64; Marsh Tr. 37:19–38:10.) These facts belie any inference that retaliatory animus based on her tardy and deficient FMLA application played a role in the decision to terminate Plaintiff. *See, e.g., Hockenjos*, 2016 WL 2903269, at *11 ("The fact that these [job performance] warnings predate plaintiff's request for leave also weakens the inference of a causal connection between the two events.").

Plaintiff's temporal "causation" argument is further undermined because there is no evidence here that Delta was ever aware of Plaintiff's May 2017 application for FMLA leave. (56.1 at ¶ 82; Fleming Decl., Exs. II, MM.) At the time the termination decision was made, Delta had been advised that Plaintiff's April 2017 FMLA application had been denied for lack of documentation, and there is no evidence that Sedgwick ever advised Delta of the subsequent

submission of the medical certification.  (56.1 at ¶¶ 70-71.)  Establishing Delta's awareness of Plaintiff's protected activity is part of Plaintiff's *prima facie* burden for her retaliation claims.  *See Fernandez*, 2017 WL 3432037, at *7.  Her failure to do so is independently sufficient grounds to award summary judgment to Delta.  *See id.*

Even if Plaintiff's weak effort had been sufficient to make out a *prima facie* case (it is not), in order to rebut Delta's clearly articulated and contemporaneously documented, legitimate reason for her termination and overcome a motion for summary judgment, she is required to present material evidence of pretext.  *Philippe*, 2018 WL 1559765, at *7.  Courts consistently recognize that "[the] FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave." *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 429 (S.D.N.Y. 2004) (quotation and citation omitted).  Here, the basis for Plaintiff's termination – unacceptable overall reliability – is directly confirmed in contemporaneous documents prepared in connection with the termination decision. These reliability concerns, which were pervasive throughout Plaintiff's employment, are also documented in Plaintiff's performance report and prior documented performance development. The termination recommendation was reviewed and approved by senior human resources managers, against whom Plaintiff has made no allegations (let alone provided evidence) of any bias.  (56.1 at ¶ 72, 75.)[8]

Again, Plaintiff's exclusive reliance on the timing of her termination – which naturally followed on the heels of the serious "failure to cover" while she was already on an FCAN for reliability – is insufficient to satisfy her burden of showing Delta's reasons were pretextual and

---

[8] Following the termination, Plaintiff availed herself of Delta's CRP process and presented evidence in her own defense before a panel of Delta employees, whom Plaintiff did not know and against whom Plaintiff also makes no allegations.  (56.1 at ¶ 80.)  That panel also affirmed the termination decision.  (*Id.*)

that retaliation was the true basis for her termination.  *Robertsn*, 308 F. App'x at 570; *Bong Chul*

*Kim v. Bogopa Servs. Corp.*, No. 15-21741, 2017 WL 3242253, at *5 (E.D.N.Y. July 28, 2017)

("Without any evidence of discriminatory animus, the crux of his case for pretext is the same as

his prima facie case: the proximity in time between the disclosure of his condition and his

termination.  While closeness in time may be sufficient at the prima facie stage, it is 'insufficient

to carry plaintiff's burden' at the pretext stage."); *Hockenjos*, 2016 WL 2903269, at *7 ("In light

of the overwhelming evidence of plaintiff's poor job performance, as well as the mutual

understanding that a failure to improve could lead to his termination, the mere fact that plaintiff

was terminated the day he returned from his FMLA leave, without more, is insufficient at this

stage to create a genuine issue of material fact.").  So too is Plaintiff's contention (unsupported by

the actual record) that some of the absences cited in her the termination recommendation should

have been covered by the FMLA.  *Neal*, No. 2012 WL 3249477, at *15 (granting summary

judgment and noting that even if there was a factual issue on whether a particular absence should

have been considered unscheduled, the discipline was supported based on the overall attendance

and performance record).

    Plaintiff has no evidence to show that any of these reasons were pretextual, or that the true

reason for her termination was to retaliate against Plaintiff for using her FMLA leave.

Accordingly, Delta has established an entitlement to summary judgment in its favor on Plaintiff's

FMLA retaliation claim.

## II.    PLAINTIFF CANNOT ESTABLISH OR PREVAIL ON HER DISABILITY CLAIMS.

    Count III of Plaintiff's FAC asserts a broad claim for "ADA violations," although the

individual paragraphs within the count appear to assert separate claims for retaliation (*id.* at ¶ 65-

66) and "failure to accommodate" (*id.* at ¶ 67).  Further, while the basis for the NYSHRL and

NYCHRL claims is not specifically identified, these are presumably supplemental disability discrimination claims.  All of Plaintiff's disability-based claims fail for the several reasons discussed below.

### A.    Plaintiff's ADA Claims Are Partially Time-Barred.

Plaintiff's disability claims under the ADA are subject to a 300-day statute of limitations running backward from the date that Plaintiff filed her charge with the EEOC.  *See* 42 U.S.C. § 2000e-5(e), *incorporated into ADA by reference in* 42 U.S.C. § 12117(a); *Bartone v. Mattera*, No. 15-6362, 2016 WL 6537957, at *5 (E.D.N.Y. Nov. 3, 2016).  Plaintiff filed her EEOC Charge on or about September 5, 2017.[9]   (*See* 56.1 at ¶ 91.)  Therefore, Plaintiff's ADA claims must be predicated on events that occurred on or after November 9, 2016 in order to be timely.  This excludes all of the performance development that Plaintiff received prior to her termination, including her receipt of a CAN in October 2013 and FCAN in June 2015.[10]

### B.    Plaintiff Cannot Establish That She Was A Qualified Individual With A Disability.

A plaintiff is disabled within the meaning of the ADA if she (1) suffers from an impairment; (2) identifies a major life activity affected by the impairment; and (3) shows that the impairment "substantially limits" that major life activity.  *Bolden*, 2011 WL 3439532, at *2 (Block, J.); *see also Woolf v. Strada*, 949 F.3d 89, 95 (2d Cir. 2020) (affirming summary judgment where plaintiff did not establish that "his work-induced impairment substantially limited his ability to work in a

---

[9] Even if the Court were to use the alleged August 28, 2017 original submission date for purposes of assessing the statute of limitations, the cited performance development in 2013 and 2015 remains untimely.

[10] These acts also cannot form the basis of Plaintiff's claims under the NYSHRL or NYCHRL as both occurred before Plaintiff (who is not a New York resident) transferred to New York.  *See Hoffman v. Parade Publications*, 15 N.Y.3d 285, 291-292 (N.Y. 2010)  (holding that the NYSHRL and NYCHRL only apply if the discriminatory conduct had an impact in New York State or City); *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 221 (E.D.N.Y. 2018) ("To state a NYCHRL claim, a plaintiff is required to 'allege that he was discriminated against by the defendant within New York City.'" (internal citation omitted)); *Hardwick v. Auriemma*, 983 N.Y.S.2d 509, 512 (N.Y. App. Div. 2014) ("A non–New York City resident cannot avail him or herself of the protections of the City Human Rights Law unless he or she can demonstrate that the alleged discriminatory act had an impact within the City's boundaries.").

class or broad range of jobs[,]" and holding that "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working").  In her FAC, Plaintiff identifies her disability as "bursitis in her left hip," which she claims "can interfere with and cause severe difficulty walking, and can cause swelling, inflation and severe pain."  (FAC, ¶ 2.[11])  Plaintiff has presented no evidence to support this claim.  Notably, Plaintiff was not diagnosed with bursitis until late April 2017, and, in the FMLA medical certification prepared after this diagnosis, <u>Plaintiff's orthopedist represented that Plaintiff did not have "an extended inability to work or engage in regular daily activities due to a condition for which treatment may not be effective</u>."  (56.1 at ¶ 66; Fleming Decl., Exs. EE and QQ.)  Accordingly, Plaintiff has failed to establish that she is disabled under the law, which entitles Delta to summary judgment on each of her disability-based claims.[12]

### C.     Plaintiff Cannot Establish a Claim for Disability-Based Retaliation.

Plaintiff's disability-based retaliation claims are analyzed under the same standard as her FMLA retaliation claim and fail for the same reasons.  *See Lawson v. Homenuk*, 710 F. App'x 460, 462 (2d Cir. 2017) ("Discrimination and retaliation claims brought under the ADA, FMLA, and NYSHRL are all governed by the burden-shifting framework set forth in *McDonnell Douglas*

---

[11] When asked to identify her disability during her deposition, Plaintiff also cited her right knee (Pl. Tr. 43:9-12), her neck (*id.* at 45:8-16), a ruptured tendon in her foot (*id.* at 49:1-8), an abscessed tooth (*id.*), and allergies (*id.* at 66:2-5).  However, because her FAC was filed after her deposition "to narrow the claims and for accuracy," Delta understands that the disability identified therein – i.e., the bursitis in the hip – is the basis for Plaintiff's disability claims.

[12] If the Court were to assume that Plaintiff's purported disability interfered with her ability to walk, Plaintiff also cannot show that that she was incapable of performing an essential function of the flight attendant position – i.e., moving about the aircraft to assist passengers.  *Booker v. Soho Studio Corp.*, No. 17-5426, 2020 WL 363912, at *5 (E.D.N.Y. Jan. 22, 2019) (finding plaintiff not a "qualified individual" under the ADA where plaintiff was unable to perform an essential function of his job).  Relatedly, it is well established that "regularly attending work is an essential function of virtually every job," particularly for safety sensitive positions such as a flight attendant.  *Vandenbroek v. PSEG Power Conn. LLC*, 356 F. App'x. 457, 460 (2d Cir. 2009) (holding that reliable attendance at scheduled shifts was an essential function of a boiler operator, who was required to monitor the boiler and respond to alarms); *Lazzari v. N.Y.C. Dep't of Parks & Recreation*, 751 F. App'x. 100, 103 (2d Cir. 2018) (regular attendance was an essential function of a maintenance worker).  To the extent Plaintiff was unable to regularly attend work because of a purported disability, she cannot show she was capable of performing the essential functions of that position.

*Corp. v. Green*."); *Powell v. Dep't of Educ. of City of New York*, No. 14-2363, 2018 WL 4185702, at *6 (E.D.N.Y. Aug. 30, 2018) ("The standard for establishing an adverse employment action is the same for both [FMLA and ADA] types of claims.").  Apart from the fact that Plaintiff claims that she is disabled – which, as discussed above, cannot be established – Plaintiff offers no evidence to suggest that her purported disability played any role in an employment decision or that it otherwise caused her supervisors to treat her differently.

Plaintiff has presented no evidence from which the Court could infer that any of her managers were aware of her purported disability.  Importantly, <u>Plaintiff was not diagnosed with bursitis until late April 2017, after all of the absences that formed the basis for her termination.</u>  (*See* 56.1 at ¶ 66; Pl. Tr. 157:18-19.)  Although Plaintiff now appears to claim that her April 2017 absences were related to her bursitis, those assertions are counter to the comments about her tooth and foot that she made to FSM Marsh and to her doctor at the time of those absences.  (56.1 at ¶¶ 53-54; Marsh Tr. 50:20 – 51:16.)  Plaintiff's self-serving comments simply cannot create a material issue of dispute in light of the unambiguous, contemporaneous written record including medical reports from her own doctor.  *See Thomson v. Odyssey House*, 652 F. App'x 44, 46–47 (2d Cir. 2016) (affirming dismissal of disability claim where plaintiff did not establish when, if ever, she notified the defendant of her disability); *Cousar v. New York-Presbyterian/Queens*, No. 16-1784, 2019 WL 4015440, at *19, n.18 (E.D.N.Y. Aug. 26, 2019) (holding that plaintiff did not establish a failure to accommodate claim where she did not show that her employer was aware of her disability).

As it is undisputed that Plaintiff never sought any form of accommodation for bursitis or any problem walking while she was employed, her ADA and state and local disability law claims rest entirely on an argument that her managers should have assumed based on the volume of her

absences that Plaintiff was disabled.  Even if there were any legal support for this argument (and there is not), courts have repeatedly held that "[t]he ADA does not require employers to tolerate chronic absenteeism even when attendance problems are caused by an employee's disability." *Lewis*, 908 F. Supp. 2d at 327; *see also Jacobson v. Capital One Fin. Corp.*, No. 16-6169, 2018 WL 6817064, at *16 (S.D.N.Y. Dec. 12, 2018) ("An employer may hold a disabled employee to legitimate performance expectations, as long as the employee has the same opportunity to succeed as nondisabled employees do."); *Corr v. MTA Long Island Bus*, 27 F. Supp. 2d 359, 369 (E.D.N.Y. 1998), *aff'd*, 199 F.3d 1321 (2d Cir. 1999) ("Plaintiff's disability, however, may not be used to shield him from the adverse consequences of inadequate job performance.").

Accordingly, Plaintiff's disability-based retaliation claims fail in their entirety.

### D.      Plaintiff Cannot Establish a Claim for Failure to Accommodate.

Apart from invoking the words "failed to accommodate" in Count III of her FAC, Plaintiff offers no evidence in support of her claim that Delta violated the ADA by not providing Plaintiff with a reasonable accommodation.  Summary judgment is appropriate where a plaintiff cannot identify a reasonable accommodation that the defendant refused to provide, or where there is evidence that the defendant offered a reasonable accommodation to the plaintiff.  *Gronne v Apple Bank For Sav.*, 1 F. App'x 64, 67 (2d Cir. 2001) (internal citations omitted).  Fundamentally, Plaintiff's claim fails because she cannot identify any reasonable accommodation that she requested or that was denied to her.  *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566-567 (2d Cir. 2000) (holding that plaintiff bears the burden of both burden of both production and persuasion on this element).  Indeed, although Plaintiff was aware that Delta maintains a specialized team to handle accommodation requests (Pl. Tr. at 44:16-24), she never contacted anyone on that team regarding her bursitis or otherwise requested an accommodation from her

24

managers.  Therefore, Delta is entitled to summary judgment on Plaintiff's failure to accommodate claim.

## CONCLUSION

For all of the reasons set forth above, Delta respectfully requests that the Court grant summary judgment in its favor and dismiss all of the claims asserted in Plaintiff's First Amended Complaint in their entirety and with prejudice.

Dated: April 22, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Ira G. Rosenstein*

Ira G. Rosenstein
Michael F. Fleming
Jordan S. Fisher
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
ira.rosenstein@morganlewis.com
michael.fleming@morganlewis.com
jordan.fisher@morganlewis.com

*Attorneys for Defendant Delta Air Lines, Inc.*