UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
Hillary Smallwood

                Plaintiff,

  -against-

Delta Airlines, Inc.

                Defendant.
------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:18-cv-3543-FB-ST

*Appearances:*
*For the Plaintiff*:
DAVID A. BERLIN
Weisberg Law
7 South Morton Ave.
Morton, PA 19010

*For the Defendant*:
IRA G. ROSENSTEIN
Morgan Lewis & Bockius, LLP
101 Park Ave.
New York, NY 10178

**BLOCK, Senior District Judge:**

      The plaintiff, Hillary Smallwood ("Smallwood"), alleges that her former employer, Delta Airlines, Inc. ("Delta"), interfered with her rights under the Family and Medical Leave Act ("FMLA") and punished her for exercising those rights when it terminated her employment based on absences that should have been covered medical leaves. She further argues that Delta violated the Americans with Disabilities Act ("ADA") and the New York State and City Human Rights Laws

1

("NYSHRL" and "NYCHRL," respectively) by terminating her employment "due to her disability and/or perceived disability:" bursitis. ECF No. 40 at 1, 9-11.

Delta moves for summary judgment on all of Smallwood's claims. Its motion is granted as to Smallwood's ADA claims but denied as to her FMLA and state law claims.

## I.

The facts below are drawn from the parties' submissions. They are either undisputed or, if disputed, presented in the light most favorable to Smallwood. The parties' disputes of material fact are discussed in Part III of this order.

A.   **Employment and Termination**

Hillary Smallwood worked as a flight attendant for 28 years, joining Delta after its 2009 merger with her former employer, Northwest Airlines. At both Delta and Northwest, Smallwood received high marks for her in-flight service. However, she received poor marks for her "Reliability" and was repeatedly disciplined for missing flights, failing to notify Delta in advance of her absences and arriving late to shifts. In June of 2015, she was given a Final Corrective Action Notice (FCAN) and advised that failure to improve her performance or any infraction of company policy would result in termination.

Thereafter, Smallwood continued to miss flights and accrue unexcused absences. Nonetheless, Delta took no further formal action against Smallwood

until April of 2017, when she missed work on April 4 and 25, and failed to give timely notice of an absence on April 12.[1] Following these absences, Delta suspended Smallwood without pay, effective May 10, 2017. On that same date, Smallwood submitted a written statement, in which she explained that she had "a ruptured tendon in [her] foot & bursitis in my hip [which] just started in the last month," along with an "abscessed tooth." ECF No. 57, Ex. 38. Five days later, she submitted a supplemental letter, in which she advised Delta that she was "working on FMLA [leave applications] for all of [her unexcused absences]." *Id.*, Ex. 40.

On May 30, 2017, Delta terminated Smallwood's employment. The termination letter stated that Smallwood would be terminated "for the reasons your leader discussed with you on 5/10/2017," i.e., because of her absences. ECF No. 57, Ex. 41; *see also*, ECF No. 57, Ex. 13 (list of infractions prepared for the May 10 meeting); Ex. 35 (May 10 memorandum confirming suspension and recommending termination); Ex. 39 (memorandum to Human Resources summarizing basis for termination).

B.    **Smallwood's 2017 Leave Applications**

Delta employs Sedgewick Claims Management, Inc. ("Sedgewick") to adjudicate requests for FMLA leave. Throughout her tenure at Delta, Smallwood

---

[1] Smallwood was, however, required to participate in "Informal Verbal Coaching" sessions when she missed flights in this period.

3

applied for and obtained FMLA leave through Sedgewick on several occasions. She was approved for a period of intermittent leave between December 27, 2016 and February 27, 2017. Consistent with its corporate policy, Delta changed a number of Smallwood's absences in that period from "unexcused" to "excused" after her request for leave was granted.

On April 12, 2017, Smallwood applied for a period of leave to cover absences between April 12 and April 14. On April 13, 2017, Sedgewick contacted Smallwood and informed her that she was required to provide medical certification.[2] It also contacted Smallwood's manager at Delta and learned that she had reported her April 12 absence less than three hours before she was scheduled to fly and had therefore violated a Delta policy.[3] Although Sedgewick tried to contact Smallwood to determine whether "extenuating circumstances" justified her failure to timely report her absence, it was unable to reach her. On April 19, 2017, Sedgewick denied Smallwood's FMLA application and advised Delta of its decision the next day.

---

[2] Delta employees seeking FMLA leave are required to submit a medical certification form completed by a physician. The form asks a series of questions about the employee's medical conditions and treatment regimen.

[3] Delta requires flight attendants to give three hours' notice of any absences they intend to take. ECF No. 57, Ex. 8. Failure to report an absence in a timely manner may result in discipline, but a late-report can be excused if "extenuating circumstances" justify it. *See Id.*, Ex. 24 at 24.

4

Smallwood sought a second FMLA leave for the period of April 24 through April 26, 2017. Sedgewick requested a medical certification form by May 4, 2017 but did not receive a completed form by that date. It therefore denied that application as well and advised Delta of its decision to deny all of Smallwood's applications for "from April 12 to May 5." ECF No. 57, Ex. 24 at 15.

On May 8, 2017, Smallwood's doctor faxed a complete medical certification form to Sedgewick. Sedgewick received the form on May 10 and reopened Smallwood's requests for leave. Sedgewick declined, however, to grant the request immediately and instead asked Smallwood's physician to clarify his responses on the form and resubmit it. Having received no response from Smallwood's physician, Sedgewick again denied Smallwood's request on May 26, 2017. Nonetheless, Sedgewick continued to seek additional information about Smallwood's request through June of 2017.

## II.

On a motion for summary judgment, the court must "resolv[e] all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (citing *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010)). Summary judgment is appropriate only if the pleadings, the discovery materials on file, and

5

any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Discrimination and retaliation claims brought under the FMLA, ADA and New York state law are all governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Graziadio v. Culinary Institute of America*, 817 F.3d 415, 429 (2d Cir. 2016) (FMLA and ADA); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (state law). Under that framework, the plaintiff must first make a *prima facie* showing of discrimination or retaliation, which the employer may rebut with a legitimate, non-discriminatory reason for its adverse action. *Id.* If the employer can articulate such a reason, the burden shifts back to the employee to show that the employer's reason was pretextual. *Id.*

### III.

A.   **ADA Claims**

1. **Discrimination**

To state a claim for disability discrimination, a plaintiff must prove (1) that her employer is covered by the ADA; (2) that she is an "individual with a disability" as defined by the ADA; (3) that she is otherwise qualified for her position, with or without reasonable accommodation; and (4) that she suffered an

6

adverse employment action because of her disability. *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013).

Smallwood fails to show that she has a "disability" within the meaning of the statute and therefore fails to make a *prima facie* showing of discrimination. The ADA defines disability as "a physical or mental impairment which substantially limits one or more of [her] major life activities. . . a record of such impairment. . . or [that she] is regarded as disabled." *See* 42 U.S.C. § 12102(1) (defining disability).

Smallwood argues that her bursitis is a disability because it "can interfere with and cause severe difficulty walking." ECF No. 40 at 2. This assertion is not especially persuasive, given that six of the seven courts to consider the question have found that bursitis does not "substantially limit a major life activity."[4] Yet

---

[4] *See, e.g.*, *Bluestein v. Central Wisconsin Anesthesiology*, 986 F.Supp.2d 937, 946 (W.D. Wis. 2013) (employee with "ischiogluteal bursitis. . .hamstring tendinopathy, sciatica, and [a] sacral nerve root cyst" was not disabled); *Arce v. Potter*, 818 F.Supp.2d 402, 409 (D.P.R. 2011) ("cervical and shoulder bursitis" does not qualify as a disability); *Lindsay v. Pennsylvania State University*, 2009 WL 691936, at *13-*14 (M.D. Pa Mar. 11, 2009) (employee with "bi-lateral [*sic.*] carpal tunnel syndrome, bi-lateral ulna syndrome, osteoarthritis, bursitis, and spinal curvature" was not disabled); *Michaels v. Attorney General*, *Dept. of Justice*, 544 F.Supp.2d 131, 136 (D. Conn. 2008) (concluding that bursitis "could conceivably qualify as [a] physical impairment" but is not a "disability"); *Mikell v. Waldbaum, Inc.*, 2003 WL 21018844, at *1 (S.D.N.Y. May 5, 2003) (granting summary judgment on ADA claim because "carpal tunnel syndrome and bursitis affecting employee, although qualifying as impairments, did not substantially limit [a] major life activity"); *Wernick v. Federal Reserve Bank of N.Y.*, 1995 WL 598973, at *2-*3 (S.D.N.Y. Oct. 10, 1995) (employee with physical impairments including

7

even if the Court were inclined to dispute the majority position, Smallwood's failure to describe her limitations in "specific detail" and her doctor's statement that she did not "have an extended inability to work or engage in regular daily activities" are fatal to any argument that her bursitis is a disability under the ADA. ECF No. 57, Ex. 43 at 9 (doctor's statement). *See also Bluestein*, 986 F.Supp.2d at 946 (rejecting claim of "substantial limitation" where the plaintiff "[did] not provide any detail" and "[spoke] only in the broadest terms of how the condition limits her major life activities"). Because Smallwood fails to establish that she has an ADA disability—and does not argue that she is "regarded as [disabled]"—Delta is entitled to summary judgment on her ADA failure to accommodate and discriminatory discharge claims.[5]

---

"[bilateral] trochanteric bursitis, lumbar spasm and cervical spasms. . . is presumed to have a physical impairment" but "is not disabled within the meaning of the Rehabilitation Act or ADA"); *but see Wiederhold v. Sears, Roebuck and Co.*, 888 F.Supp.2d 1065, 1069, 1080 (D. Or. 2012) (assuming, without comment, that employee with "bone spurs. . . bursitis and tendinitis in both feet" was disabled under the ADA).

[5] Smallwood tries to save her failure to accommodate claim by arguing that Delta violated an independent duty to "engage in a constructive, interactive dialogue concerning [her accommodation request]." ECF No. 40 at 10. Regardless of whether such a duty exists, the record in this case reflects that Delta has a process in place to request accommodations, which Smallwood never used. *See* ECF No. 57, Ex. 10. *See also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 219 (2d Cir. 2001) (declining to decide whether employer's "refusal to enter into an interactive process alone would foreclose summary judgment" on ADA claim). Delta cannot be faulted for "refusing" to engage in a process Smallwood never initiated.

8

## 2. Retaliation

To succeed on a claim for ADA retaliation, a plaintiff must show that (1) she was engaged in an activity protected by the ADA; (2) her employer was aware of that protected activity, (3) she suffered an adverse employment action; and (4) there is a causal connection between her protected activity and the adverse employment action. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F.Supp.3d 426, 438 (E.D.N.Y. 2015) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

Delta is entitled to summary judgment because Smallwood cannot demonstrate that she engaged in an activity protected by the ADA. The record reflects that Smallwood repeatedly sought FMLA leave, but no evidence suggests that she sought an ADA accommodation or "opposed any act or practice made unlawful by the ADA or . . . made a charge, testified, assisted or participated. . .in an investigation, proceeding or hearing under [the ADA]." *See* 42 U.S.C. § 12203(a) *see also Weixel v. Bd. of Educ. Cty. of NY*, 287 F.3d 138, 149 (2d Cir. 2002) (noting that "seeking reasonable accommodation of disability. . . constitutes protected activity"). Thus, while Smallwood may have viable claims under the FMLA for interference and retaliation, she fails to establish similar claims under the ADA.

B.     **FMLA Claims**

The Court denies summary judgment on Smallwood's FMLA claims related to her April 2017 absences.[6]

1. **Interference**

To establish a claim for FMLA interference, a plaintiff must show (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer under the same statute; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice of her intent to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA. *Graziadio*, 817 F.3d at 424.

` There is no dispute that Smallwood is an eligible employee and Delta a covered employer. Moreover, the record contains ample evidence that Smallwood provided notice of her intent to apply for FMLA leave in April 2017. *See, e.g.*, ECF No. 57, Exs. 38, 40. Thus, the parties' dispute centers on the questions of whether Smallwood was entitled to take leave, and whether Delta denied her benefits to which she was entitled.

---

[6] The Court accepts Smallwood's representation that her claims arise out of her May 2017 termination and personnel actions taken in response to her April 2017 absences. *See* ECF No. 59 at 9 ("While Delta claims [that] the [pre-2017] dates are time barred. . . . it is proper for Plaintiff [to mention them] to show that Delta's reasoning for her termination was false"). To the extent that Smallwood seeks to pursue an independent claim based on discrete acts of interference that occurred before 2017, that claim would be barred by the FMLA's statute of limitations.

Disputes of material fact preclude summary judgment on these questions. The record contains (1) evidence that Smallwood was granted FMLA leave in the past, (2) medical documentation of Smallwood's bursitis diagnosis, (3) Smallwood's testimony that she was unable to work on several occasions in April 2017, and (4) a medical certification form that indicates Smallwood would be intermittently "unable to work" between April and June 2017. *See* ECF No. 57, Ex. 43. Based on these facts, a reasonable juror could find that Smallwood was entitled to FMLA leave, and thus that Sedgewick's denial of her request was improper.

Delta offers two reasons why summary judgment is nonetheless appropriate. First, it argues that Sedgewick properly denied Smallwood's request for leave because she submitted an incomplete medical certification form and did not correct the form when Sedgewick gave her the chance to do so. ECF No. 63 at 7. *See also Porter v. Donahoe*, 484 F. App'x 589, 591 (2d Cir. 2012) (affirming summary judgment where "a reasonable jury could find only that [the Plaintiff] failed to correct deficiencies in [medical certification form"). Smallwood responds that Delta knew she was actively trying to correct deficiencies in her paperwork when it suspended and terminated her, effectively denying her "the opportunity to cure the alleged deficiencies." ECF No. 59 at 6; *see also* ECF No. 60, Ex. 1 at 178-80 (Smallwood's testimony that she contacted Sedgewick and her physician about correcting the form upon receipt of Sedgewick's request for clarification); Ex. 9 at

11

151 (noting, in Sedgewick's claim file, that "[Smallwood] called regarding clarification. . . [Smallwood] is currently suspended at work").

Although Smallwood does not say so directly, the thrust of her argument appears to be that Delta's decision to suspend her while her request for FMLA leave was being adjudicated "discouraged" her from pursuing her FMLA claims. *See generally Reilly v. Revlon, Inc.*, 620 F.Supp.2d 524, 534-35 (S.D.N.Y. 2009) (discussing "discouragement theory" of liability for FMLA interference). An employer is liable under a discouragement theory if its actions "would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights." *Id.* Applying that theory to this case, it is not only possible but probable that an "employee of ordinary resolve" would abandon an FMLA leave request if she believed her pursuit of that request had contributed to a suspension or termination. A jury must therefore decide whether Delta's suspension and termination of Smallwood "discouraged" her from exercising her rights under the FMLA.

Second, Delta argues that Smallwood cannot prevail on an interference claim because she had "full access to Delta's robust program, fully utilized the program and was approved for FMLA leave when she met the criteria of the statute." ECF No. 56 at 18. Delta does not, however, cite any caselaw, which states that an employee's ability to access a claim-adjudication program prevents that

employee from stating an interference claim, and Smallwood's entitlement to benefits hinges on disputed issues of fact.

### 2. Retaliation

The Court denies summary judgment on Smallwood's retaliation claim for essentially the same reasons it denied summary judgment on her interference claim. To state a claim for retaliation, a plaintiff must show that (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of hostile intent. *Graziadio*, 817 F.3d at 429. Here, the record reflects that Smallwood suffered two "adverse employment actions" (suspension and termination) while Sedgewick was adjudicating her requests for FMLA leave.

Although Delta correctly argues that an inference of retaliation does not arise merely because Smallwood's termination closely followed her FMLA applications, Smallwood's claim does not rely on temporal proximity alone. Rather, Smallwood points to a May 10 memorandum entitled "Comprehensive Review of Work History" as evidence Delta retaliated against her. ECF No. 60, Ex. 3 at 5. She asserts that Delta relied on this memorandum—which lists all of her absences, including the April absences that Sedgewick was still adjudicating at the time of Smallwood's suspension —when deciding to terminate her, and therefore

13

that these protected absences played a role in her termination. ECF No. 59 at 12; *see also* ECF No. 57, Ex. 35 (mentioning Smallwood's April absences in memorandum explaining suspension decision to her "Base Manager"); Ex. 39 (discussing April absences in internal memorandum to Human Resources).

This argument is not overwhelming. Delta could defeat it either by showing that Sedgewick's determinations were all correct (and thus that Smallwood was not entitled to FMLA leave) or by proving that no decisionmaker relied on the "Comprehensive Review Memorandum" as a basis for terminating Smallwood. However, Smallwood's argument suffices to create an issue of material fact. A jury must be allowed to decide whether Delta improperly disciplined Smallwood for absences that should have been covered by the FMLA, or which were still being adjudicated when she was disciplined.

### C. State Law Claims

Smallwood's vaguely worded state law claims fail to specify which sections of the NYS- and NYCHRLs Delta allegedly violated, but the Court assumes she intended to state claims for disability discrimination.[7] *See* Fed. R. Civ. P. 8(e)

---

[7] Because Smallwood's state law disability discrimination claims share "a common nucleus of operative fact" with her federal FMLA claims, the Court may exercise its supplemental jurisdiction to decide them. *See United Mine Workers Assoc. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also* 28 U.S.C. § 1367(a) ("[In] any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims. . . that form part of the same case or controversy").

14

("Pleadings must be construed so as to do justice"). A discrimination claim under the NYSHRL has the same elements as an ADA discrimination claim, while a NYCHRL plaintiff must prove only that "[s]he was treated less well, at least, in part for a discriminatory reason." *Piligian v. Icahn School of Medicine at Mount Sinai*, 2020 WL 5758752, at *4-*5 (S.D.N.Y. Sept. 28, 2020).

Both the NYS- and NYCHRLs "have a broader definition of disability than does the ADA [and] neither requires a showing that the disability limits a major life activity." *Thomson v. Odyssey House*, 2015 WL 5561209, at * 18 (S.D.N.Y. Sept. 21, 2015) (citing *Revlon, Inc.*, 620 F.Supp.2d at 541); *see also Giordano v. City of N.Y.*, 274 F.3d 740, 754 (2d Cir. 2001) ("[The] definition of disability under New York law is not coterminous with the ADA definition"). Rather, the NYSHRL defines disability as "a physical, mental or medical impairment resulting from anatomical, physiological. . .or [other] conditions, which prevents the exercise of a normal bodily function *or is demonstrable by medically acceptable clinical or laboratory diagnostic techniques*," and the NYCHRL defines it as "any physical, medical, mental or psychological impairment." N.Y. Exec. Law § 292(21)(a) (emphasis added); N.Y.C. Admin. Code § 8-102. Because the record contains dozens of pages of medical records, including a doctor's diagnosis of bursitis, a reasonable juror could conclude that bursitis is a disability under these broad definitions. *See, e.g.*, ECF No. 57, Ex. 31.

15

A rational juror could also find that Smallwood satisfies the remaining elements of a disability discrimination claim under New York law. Delta does not appear to dispute that Smallwood is qualified for the job she held for 28 years, and termination is obviously an "adverse employment action." Delta contends that Smallwood was not terminated "because of" her disability, but the question of motivation must await a jury. The record shows that (1) Delta knew Smallwood was approved for medical leave several times in the months before her discharge; (2) Delta continued its termination process after receiving a letter from Smallwood indicating that she "had many medical issues [including]. . . bursitis, had Drs [*sic*] notes for all of them and [was] working on [obtaining] FMLA [leave] for all of them"; and (3) Delta prepared a memorandum in advance of Smallwood's termination meeting that listed all of her absences, including those that were or should have been medically excused. *See* ECF No. 57, Ex. 40; ECF No. 60, Ex. 3.

A rational juror could infer from these facts that Smallwood was terminated because of absences she was medically required to take and before Delta had ascertained whether all of the absences held against her were disability-related. Put another way, although Delta plausibly argues that disability was not the sole motivating factor behind Smallwood discharge, there is sufficient evidence in the record to permit a jury to find that it was one of several "substantial motivating factor[s]" behind her termination. *See Holcomb v. Iona College*, 521 F.3d 130, 142

16

(2d Cir. 2008) (plaintiff not required to prove that discrimination was the sole motive for termination). Smallwood's NYSHRL and NYCHRL wrongful termination claims must therefore be tried to a jury.[8]

## Conclusion

Delta's motion for summary judgment is **GRANTED** as to Smallwood's ADA claims but **DENIED** as to her remaining claims.

**SO ORDERED.**

                                                  /S/ Frederic Block
                                                  FREDERIC BLOCK
                                                  Senior United States District Judge

Brooklyn, New York
February 9, 2021

---

[8] To the extent that Smallwood instead makes a "failure to accommodate" claim under state law, the Court finds that Delta is not liable. Smallwood's failure to seek accommodation is as fatal to her state-law "failure to accommodate" claim as it was to her ADA claim.